## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Brandyn Phillips,                                    Civ. No. 13-1575 (DWF/JJK)

                 Plaintiff,

v.

State of Minnesota; Jane Lanwehr,
supervising director; Mona Dolman,                    **REPORT AND**
Commissioner; Minnesota Department                    **RECOMMENDATION**
of Public Safety; and Minnesota
Department of Motor Vehicles;

                 Defendants.

Brandyn Phillips, Suite 135, #118, 574 Prairie Center Drive, Eden Prairie, MN
55344, *pro se*.

James E. Haase, Esq., Minnesota Attorney General's Office, counsel for
Defendants.

## INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss the

Complaint (Doc. No. 10).  The motion has been referred to this Court for a Report

and Recommendation under 28 U.S.C. § 636 and D. Minn. LR 72.1.  On

November 19, 2013, this Court held a hearing on the matter in which counsel

appeared on behalf of Defendants and Plaintiff appeared *pro se*.  (*See* Doc.

No. 23.)  For the reasons stated below, this Court recommends that Plaintiff's *pro*

*se* Complaint be dismissed.

## BACKGROUND

### I.   Factual History

The facts underlying Plaintiff's case all relate in one way or another to the revocation proceedings that followed three driving incidents – one admittedly alcohol-related, and the others where Plaintiff disputes the alcohol relatedness. One of the allegedly non-alcohol related incidents resulted in Plaintiff being arrested and charged with refusal to submit to testing in violation of Minn. Stat. § 169A.52.  After state civil administrative proceedings and appeals on that matter, judgment was entered against Plaintiff in August 2007.  Ultimately, this resulted in Plaintiff's loss of his driving privileges in August 2007.

Plaintiff is an electrician and stonemason by trade, and he asserts that both his trade tools and his vehicles are crucial to his career.  (*Id.* at 1–2.)  Because of the loss of his driving privileges (and in some instances the repossession of his vehicles), Plaintiff asserts that he has gone through periods of homelessness and joblessness, and he was forced to sell his trade tools to live.  (*Id.*, *passim.*)

Plaintiff filed this case, *pro se*, on June 26, 2013.  (Doc. No. 1, Compl.)  The Complaint contains a federal civil rights claim for relief under 42 U.S.C. § 1983, and requests habeas corpus relief under 28 U.S.C. § 2241.  (*Id.*)  Plaintiff generally claims that his constitutional rights were violated during the procedures used to take his driving privileges following driving incidents he claims involved no use of alcohol and when those offenses were labeled as alcohol-related.  (*Id.*,

2

*passim*.)  It appears that Plaintiff is claiming that the Defendant State and agency actors violated his due process rights by concluding that the offenses were alcohol-related without allowing him to raise arguments in his defense at the time of his arrest.  It also appears that Plaintiff raises a constitutional challenge to the Minnesota's implied consent law, including arguing that the restrictions that are imposed after a test refusal are unconstitutional because they are not based on evidence, but on a presumption of guilt.  As best this Court can tell, Plaintiff is seeking injunctive relief for violations of his due process rights during the state and agency revocation process.  (*See id.* at 18.)  At the hearing, Plaintiff insisted that he was not appealing the state or agency decisions that resulted in the revocation of his driver's license.  However, it is unclear whether the injunctive relief he seeks is, in effect, asking for his driving privileges in Minnesota to be restored without restriction, whether he is asking for the Court to order the state and agency actors to change their procedures, or something else altogether. Plaintiff brought his action against the State of Minnesota; Jane Landwehr, Supervising Director of the Minnesota Department of Motor Vehicles; Ramona Dohman, the Commissioner of Public Safety; the Minnesota Department of Public Safety; and the Minnesota Department of Motor Vehicles.

**DISCUSSION**

In the motion to dismiss, Defendants argue the claims asserted in the Complaint must be dismissed for several reasons.  Defendants contend the § 1983 claims are barred by the statute of limitations, the Court lacks subject-matter jurisdiction over the claims because they are barred by the *Rooker-Feldman* doctrine, the claims are barred by res judicata and collateral estoppel, and that Plaintiff otherwise fails to state a claim.  Defendants also contend that Plaintiff's habeas corpus claims are misplaced because the actions relating to his driving privileges are civil and Plaintiff is not in custody.

Given the repeated contentions in the Complaint that the state court and state agency proceedings violated Plaintiff's constitutional rights, and the possibility that Plaintiff's request for relief may include a request for this Court to restore his driving privileges, Plaintiff's claims and the relief he seeks raise questions of this Court's subject-matter jurisdiction and whether his claims are barred by the *Rooker-Feldman* doctrine, issues that must be addressed first.

## I.    Civil Rights Claim

### A.    Jurisdiction

A federal court is obligated to question its subject-matter jurisdiction—which is limited—before proceeding to the merits, and the party asserting jurisdiction bears the burden of overcoming the presumption that its cause of action lies outside of that limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co.*,

511 U.S. 375, 377 (1990).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  "Subject matter jurisdiction . . . is a threshold requirement which must be assured in every federal case."  *Turner v. Armontrout*, 922 F.2d 492, 493 (8th Cir. 1991).  Application of the *Rooker-Feldman* doctrine is jurisdictional and may be raised *sua sponte*.  *Lemonds v. St. Louis County*, 222 F.3d 488, 492 (8th Cir. 2000).

On a Rule 12(b)(1) motion challenging subject-matter jurisdiction, the court "has authority to consider matters outside the pleadings."  *Osborn v. United States*, 918 F.2d 724, 729 n.4 (8th Cir. 1990).  But the standards of Rule 56, which would apply to motions to dismiss for failure to state a claim under Rule 12(b)(6) that consider matters outside the pleadings, do not govern a motion challenging subject-matter jurisdiction.  Rather, the standard for motions under Rule 12(b)(1) challenging subject-matter jurisdiction, including motions raising *Rooker-Feldman* issues, is different in that the Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *P.G. v. Ramsey County*, 141 F. Supp. 2d 1220, 1230 (D. Minn. 2001) (quoting *Osborn*, 918 F.2d at 730).  "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  *Osborn*, 918

F.2d at 730 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

With the exception of habeas corpus petitions, pursuant to the *Rooker-Feldman* doctrine, lower federal courts do not have jurisdiction over challenges to state-court judgments.  *Lemonds*, 222 F.3d at 492.  The *Rooker-Feldman* doctrine is named after two U.S. Supreme Court cases – *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  *Rooker* holds that federal district courts have no appellate jurisdiction over state courts, and *Feldman* holds that federal district courts may not exercise judgment over issues that are "inextricably intertwined" with a prior state-court judgment.  *Canal Capital Corp. v. Valley Pride Pack, Inc.*, 169 F.3d 508, 512 (8th Cir. 1999).  A federal claim is inextricably intertwined when relief would effectively reverse or void the state-court ruling.  *Id.* (citations omitted).

The state and federal claims need not be identical and the federal action may be construed as a prohibited appeal essentially whenever the federal relief can only be predicated upon the determination that the state-court decision was wrong.  *Lemonds*, 222 F.3d at 493 (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987)); *see also Exxon Mobil Corp. v. Saudi Basic Ind. Corp.*, 544 U.S. 280, 284 (2005) (stating that the *Rooker-Feldman* doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered

before the district court proceedings commenced and inviting district court review

and rejection of those judgments"). The doctrine precludes both straightforward

appeals and indirect attempts to undermine state-court decisions. *Lemonds*, 222

F.3d at 492. The Eighth Circuit has specifically cautioned that state court losers

should not seek victory against their adversaries by filing a federal civil rights

action in federal court. *Dodson v. Univ. of Ark. For Med. Scis.*, 601 F.3d 750, 754

(8th Cir. 2010). Therefore, district courts may not review state-court decisions,

"even if those challenges allege that the state court's action was unconstitutional,"

*Feldman*, 460 U.S. at 486, because "[f]ederal jurisdiction to review most state

court judgments is vested exclusively in the United States Supreme Court."

*Lemonds*, 222 F.2d at 492 (citing 28 U.S.C. § 1257; *Feldman*, 460 U.S. at 486).

A party who was unsuccessful in state court thus "is barred from seeking what in

substance would be appellate review of the state judgment in a United States

district court based on the losing party's claim that the state judgment itself

violates the loser's federal rights." *Johnson v. DeGrandy*, 512 U.S. 997, 1005–06

(1994). And federal district courts may not "exercis[e] jurisdiction over general

constitutional claims that are 'inextricably intertwined' with specific claims already

adjudicated in state court." *Id.* at 492–93. In addition, federal courts have been

directed to abstain from accepting jurisdiction in instances where a grant of

equitable relief would interfere with pending state proceedings in a way that

offends principles of comity and federalism. *Night Clubs, Inc. v. City of Fort*

7

*Smith, Ark.*, 163 F.3d 475, 477 n.1 (8th Cir. 1998) (stating the *Younger* abstention

doctrine) (citing *Younger v. Harris*, 401 U.S. 37 (1971)).

Plaintiff's Complaint, at least in part, is an attempt to interfere with actions

that have been decided in state court proceedings or that are perhaps still

pending in state court.  Specifically in his claims for relief, Plaintiff states that he

"challenges the State's conditions placed on Plaintiff."  (Compl. at 17.)  Plaintiff is

therefore requesting that these "conditions" be removed.  In addition, in his claims

for relief, Plaintiff asks this Court to "[s]uspend all actions of Defendants herein

against Plaintiff which are relevant to this complaint . . ." (*Id.* at 18.)  Further,

Plaintiff's constitutional claims against the various Defendants are predicated on

their presumed participation in the implied consent and revocation proceedings,

which ultimately led to the revocation of Plaintiff's license.  Therefore, despite

Plaintiff's attempt to characterize his federal Complaint as one seeking to

vindicate his federal constitutional rights, the essence of some of the relief

Plaintiff seeks, as best this Court can tell, would include a reversal of the

Minnesota state courts' rulings against him.[1]  *See Lemonds*, 222 F.3d at 492

---

[1]      To the extent that what Plaintiff means by his request for the Court to
"[s]uspend all actions of Defendants herein against Plaintiff which are relevant to
this complaint . . ." is that the Court order any pending state court proceeding be
stayed or "suspended," this request is precluded by the *Younger* abstention
doctrine, which states that federal courts should abstain from accepting
jurisdiction in instances where a grant of equitable relief would interfere with
pending state proceedings in a way that offends principles of comity and
(Footnote Continued on Next Page)

(stating that constitutional claims that are an indirect attempt to undermine state-court decisions are not allowed); *see also Valenti v. Mitchell*, 962 F.2d 288, 296 (3d Cir. 1992) (stating that a party "cannot be allowed to escape *Rooker-Feldman* by raising a new constitutional theory in federal court").

If this Court were to remove the conditions imposed on him by the state, including restoring his driving privileges, it would be because this Court found that the state court had wrongfully adjudicated the revocation issue.  But the *Rooker-Feldman* doctrine bars this Court from reviewing Plaintiff's claims to the extent that the relief he seeks would effectively reverse or void the state court ruling in his revocation proceedings.  And "even if [Plaintiff] [is] not asking us effectively to overturn the state court's judgment, the federal claims [he] state[s] so closely implicate the decision of the state court that the federal suit would be barred anyway."  *Lemonds*, 222 F.3d at 493.  Thus, this Court concludes that, to the extent Plaintiff's Complaint requests removal of the conditions imposed on him and restoration of his driver's license, there is a lack of subject-matter jurisdiction for this Court to adjudicate the claim.

---

(Footnote Continued from Previous Page)

federalism.  *Night Clubs*, 163 F.3d at 477 n.1 (8th Cir. 1998) (stating the *Younger* abstention doctrine).

**B.    Rule 12(b)(6)**

Reading Plaintiff's Complaint liberally, however, and based on the representations of Plaintiff at the hearing, it is possible to interpret Plaintiff's request for relief as also requesting injunctive relief that would not effectively reverse or void the state court rulings.  It appears that Plaintiff is also requesting, pursuant to § 1983, injunctive relief in the form of prospective change to policies and procedures used by the state when determining whether certain conditions should be imposed on a person with a possible alcohol-related driving offense. Even so, assuming the Court does have jurisdiction over the § 1983 claim, this Court still recommends that Plaintiff's Complaint should be dismissed for failure to state a claim.

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all factual allegations in the complaint and view them in the light most favorable to the Plaintiff.  *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 740 (8th Cir. 2002).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged.  *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in

deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id.* at 555.  This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Id.* at 545.  Whether a complaint states a claim is a question of law.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."  *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  In addition, this court notes that *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  However, even a *pro se* complaint must allege facts, and not just bare, unsupported, legal conclusions.  *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("Although it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions.").

As stated above, although not altogether clear from his Complaint, it appears that Plaintiff is claiming that the Defendants violated his due process

11

rights by not affording him the opportunity to challenge that he was intoxicated at the time of his arrest after refusing to submit to alcohol testing.  However, Plaintiff does not explain in any meaningful way what was deficient about the process he received.  It appears that Plaintiff contends that his arguments should have been listened to both at the district court and DPS implied consent proceedings.  (*See* Compl. 7 ("Plaintiff was not allowed to raise or argue the first two points . . . above regarding lack of intoxication and/or alcohol consumption in combination with driving at the time of arrest . . . .  At the State's district court level, the two points . . . above regarding Plaintiff being sober at the time of arrest are deemed irrelevant . . . .  At the State's implied consent proceedings, by and through the DPS, the two points . . . above regarding Plaintiff being sober at the time of arrest are also deemed irrelevant.").)  In addition, it also appears that Plaintiff raises a constitutional challenge to the implied consent law in Minnesota, arguing that the restrictions imposed after a test refusal are unconstitutional because they are not based on evidence.[2]

---

[2]     To the extent Plaintiff argues that Minn. Stat. § 169A.20, subd. 2, which makes it a crime for a driver "to refuse to submit to a chemical test" for the presence of alcohol, violates his right to substantive due process because it criminalizes the passive or nonviolent refusal to consent and thereby submit to a warrantless police search, Plaintiff's claim fails as a matter of law as explained by the Minnesota Court of Appeals in *State v. Wiseman*, 816 N.W.2d 689, 692–96 (Minn. Ct. App. 2012)  (concluding "Minnesota's chemical-test-refusal statute, Minn. Stat. § 169A.20, subd. 2, does not violate an individual's substantive-due-process rights").  The Court of Appeals aptly explained as follows:

(Footnote Continued on Next Page)

Plaintiff brings his claims pursuant to 42 U.S.C. § 1983, which provides

that:

Every person who, under color of any statute, ordinance, regulation,

---

(Footnote Continued from Previous Page)

[The plaintiff] has not demonstrated the existence of a fundamental right, recognized under either federal or Minnesota law, to passively or nonviolently refuse to submit to a constitutionally reasonably police search.  Indeed, neither United States nor Minnesota constitutional law has ever recognized the existence of a fundamental right to engage in such conduct, and we decline to do so here . . . .

Because [the plaintiff] has not established that Minnesota's chemical-test-refusal statute implicates a fundamental right, substantive due process requires only that the statute is not arbitrary or capricious, or that it reflects a reasonable means to a permissible state objective . . . . Impaired drivers pose a severe threat to the health and safety of motorists in Minnesota, and the state has a compelling interest in highway safety that justifies efforts to keep impaired drivers off the road . . . . To that end, the state has a legitimate, time-sensitive interest in obtaining a blood, breath, or urine sample for chemical testing from an individual when the police have probable cause to believe that the individual committed criminal vehicular operation . . . .

The threat of criminal sanctions for chemical-test refusal, particularly when accompanied by the express warning contained in the implied consent advisory, helps ensure that the police may safely obtain a test sample from an unwilling and potentially intoxicated suspect in circumstances demanding cooperation and experience.  Accordingly, the legislature's imposition of criminal penalties for refusing to supply a blood, breath, or urine sample for chemical testing constitutes a reasonable means to achieve a permissible state objective and does not violate [the plaintiff's] right to substantive due process.

*Id.* at 695–96 (citations omitted).  This Court agrees with this substantive due process analysis.

custom, or usage, of any State or Territory or the District of
Columbia, subjects, or causes to be subjected, any citizen of the
United States or other person within the jurisdiction thereof to the
deprivation of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured in an action
at law, suit in equity, or other proper proceeding for redress . . .

*Id.* To maintain a § 1983 claim, a plaintiff must show "(1) that the defendant(s)

acted under color of state law, and (2) that the alleged wrongful conduct deprived

the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d

842, 848 (8th Cir. 2010). "For there to be section 1983 liability, there must first be

a violation of the plaintiff's constitutional rights." *Avalos v. City of Greenwood*,

382 F.3d 792, 802 (8th Cir. 2004) (quotations omitted).

Plaintiff has failed to allege an actionable violation of his constitutional

rights. The United States Constitution protects an individual's right to due

process of law. U.S. Const. amends. V, XIV, § 1. Specifically, the Due Process

Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive

any person of life, liberty, or property, without due process of law." U.S. Const.

amend. XIV, § 1. "Procedural due process imposes constraints on governmental

decisions which deprive individuals of 'liberty' or 'property' interests within the

meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."

*Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). In other words, "[t]he procedural

component of the Due Process Clause protects property interests created not by

the Constitution but by 'rules or understandings that stem from an independent

source such as state law.'" *Neal v. Fields*, 429 F.3d 1165, 1167 (8th Cir. 2005)

14

(quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)).

"The use of an automobile constitutes a protected property interest" under the Due Process Clause of the Fourteenth Amendment.  *Coleman v. Watt*, 40 F.3d 255, 260 (8th Cir. 1994).  And the Due Process Clause applies to a state's suspension or revocation of a driver's license.  *Bell v. Burson*, 402 U.S. 535, 539 (1971).  As the Supreme Court explained:

> Once licenses are issued, . . . their continued possession may become essential to the pursuit of a livelihood.  Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees.  In such cases, the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.

*Id.*  To establish a procedural due process violation, Plaintiff must prove that he was deprived of "an opportunity . . . granted at a meaningful time and in a meaningful manner for [a] hearing appropriate to the nature of the case."  *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971) (citations and quotations omitted).

Although this case does involve an interest protected by the Due Process Clause, this Court concludes that Plaintiff has failed to state a claim that he was deprived of the procedural due process required by the Fourteenth Amendment. Minnesota law provides Plaintiff an adequate opportunity to be heard.  *See* Minn. Stat. § 169A.53, subd. 2 (providing opportunity to obtain an in-person hearing before a judge once a driver's license has been revoked for failing a breath test). Plaintiff does not argue he was not provided notice, nor that he was not allowed a hearing when requested.  It appears as though Plaintiff simply disagrees with the

court's decision and is upset that the court did not give more weight to his arguments.  He has not, however, explained how the procedures provided him were constitutionally inadequate.

Plaintiff may be arguing that the timing of his hearings was improper, i.e., arguing that he was entitled to a hearing on whether he was intoxicated after he refused to take an alcohol test but before the suspension of his driver's license. Minnesota's law providing for a postdeprivation hearing, however, does not violate the Due Process Clause, and Plaintiff's argument fails as a matter of law. "Due process is a flexible concept . . . and calls only for such procedural protection as the particular situation demands." *Moore v. Warwick Pub. Sch. Dist. No. 29*, 794 F.2d 322, 327 (8th Cir. 1986).  "The [Supreme] Court usually has held that the Constitution requires some kind of hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  There are, however, exceptions to the requirement of predeprivation notice and a hearing.  In certain circumstances, "a postdeprivation hearing will satisfy due process requirements." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 n.7 (1985).  "One such instance where a postdeprivation hearing is permissible is where a state suspends or revokes a driver's license upon learning of the driver's refusal to consent to a breath test for driving under the influence of intoxicating liquors." *House v. Campion*, No. 08-2917 (RHK/JJK), 2009 WL 1850874, at *8 (D. Minn. June 25, 2009), *aff'd*, 367 F.

16

App'x 726 (8th Cir. 2010); *see also Mackey v. Montrym*, 443 U.S. 1, 19 (1979) (holding that it was permissible for the state to make "a summary suspension [of a driver's license] effective pending the outcome of the prompt post-suspension hearing"); *Keating v. Neb. Public Power Dist.*, 562 F.3d 923, 928 (8th Cir. 2009) (stating that an exception to a predeprivation hearing "applies where there is a need for quick action by the State when there is a compelling or overriding state interest in a summary adjudication").

Under Minnesota law, once a driver fails or refuses an alcohol-concentration test under the implied-consent law, a peace officer must report such failure to the Commissioner of Public Safety, who, in turn, must revoke the driver's license to drive for a specific period of time.  Minn. Stat. § 169A.52, subds. 3(a), 4(a).  The revocation becomes effective when "the commissioner or a peace officer acting on behalf of the commissioner notifies the person of the intention to revoke . . . and of revocation."  *Id* ., subd. 6.  Minnesota law further provides that within 30 days following receipt of a notice and order of revocation a person may petition the court for review for a hearing before a judge.  Minn. Stat. § 169A.53, subds. 2 & 3 (providing time for filing petition and the scope of the review).  The implied consent law authorizes the district court, after a hearing on a driver's petition for judicial review, to sustain or to rescind the revocation.  Minn. Stat. § 169A.53, subd. 3(e).

"A driver's license is an important property interest subject to due process protection." *Davis v. Comm'r of Pub. Safety*, 509 N.W.2d 380, 388 (Minn. Ct. App. 1993), *aff'd*, 517 N.W.2d 901 (Minn. 1994). But "[a]n appellant cannot assert a procedural due-process claim without first establishing that he has suffered a 'direct and personal harm' resulting from the alleged denial of his constitutional rights." *Riehm v. Comm'r of Pub. Safety*, 745 N.W.2d 869, 877 (Minn. Ct. App. 2008) (quoting *Davis*, 509 N.W.2d at 391), *review denied* (Minn. May 20, 2008). Nothing alleged in Plaintiff's Complaint indicates that he was deprived of proper notice or hearing regarding his revocations or otherwise denied his constitutional rights. Accordingly, this Court recommends that Plaintiff's due process claim regarding Defendants' failure to provide him an opportunity to be heard be dismissed.

## C.    Exhaustion of State Remedies

Plaintiff's Complaint should also be dismissed for yet another reason – failure to exhaust. Generally, a plaintiff is not required to exhaust state remedies before bringing a § 1983 claim. *See Patsy v. Bd. of Regent of Fla.*, 457 U.S. 496, 516 (1982). But "[u]nder federal law, a litigant asserting a deprivation of procedural due process must exhaust state remedies before such an allegation states a claim under § 1983." *Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000). Where a litigant has failed to exhaust available state remedies a procedural due process claim brought under § 1983 is not ripe for

18

adjudication.  *Id.* at 1020; *see also Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir.

2009).

Here, with regard to the 2002 incident that Plaintiff relies on in his

Complaint, he did not seek administrative or judicial review of his license

revocation.  And with regard to the 2005 incident that Plaintiff relies on, he did

seek judicial review of his license revocation by filing a petition with the Hennepin

County District Court.  By an Order dated February 3, 2006, the Honorable David

M. Duffy sustained the revocation of Plaintiff's driving privileges, and Plaintiff did

not appeal that decision.  Because Plaintiff has not exhausted his available

postdeprivation remedies, he cannot challenge the adequacy[3] or availability of

those remedies in this § 1983 action.  *See Hopkins v. The City of Bloomington*,

No. 12-1943, 2013 WL 5406671, at *8 (D. Minn. Sept. 25, 2013) (dismissing

---

[3]     This would include Plaintiff's "due process" challenge to the conditions
placed on him during the postdeprivation process.  (*See* Compl. 5 ("Nevertheless,
on or about August [ ] 2007 the State DPS independently convicted Plaintiff of
alcohol abuse while driving; wrongfully flagged Plaintiff's driving status as being
one of Minnesota's worst, most dangerous drunk drivers and, as a result,
proceeded forthwith imposing a probationary period of 10 years to life with
conditions that, if violated, results in Plaintiff serving a maximum penalty of 1 year
incarceration for each and every violation.  These conditions, and violations
thereof, include simply having in his possession – home or otherwise –
mouthwash which contains alcohol, or possessing or consuming a beer anywhere
at any time – including home -; even a non-alcoholic beer, (the same conditions
handed down to those incarcerated, or are on a criminal conditional release or
probation).").)

claims as not properly exhausted).[4]  Therefore, this Court recommends

dismissing Plaintiff's due process claims for this reason as well.  *See Crooks*, 557

F.3d at 849 (dismissing plaintiff's unexhausted procedural due process claims

without prejudice because a dismissal for lack of jurisdiction over the unripe

claims "is not an adjudication on the merits").

## II.     Habeas Claim

Plaintiff also appears to assert a claim requesting a writ of habeas corpus

pursuant to 28 U.S.C. § 2241.  "The writ of habeas corpus shall not extend to a

prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or

treaties of the United States."  28 U.S.C. § 2241(c)(3).  The purpose of habeas

corpus is to allow "an attack by a person in custody upon the legality of that

custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  Habeas corpus is a

proper remedy under § 2241 only where the petitioner challenges the validity of

his conviction or the duration of his confinement.  *Id.* at 490; *Kruger v. Erickson*,

77 F.3d 1071, 1073 (8th Cir. 1996).

The revocation of Plaintiff's driving privileges under the implied consent law

is a civil/administrative action, not a criminal action.  *Davis*, 509 N.W.2d at 392

(stating that implied consent revocation proceedings are civil in nature).  Because

Plaintiff is not incarcerated or serving any probationary sentence as a result of his

---

[4]      Plaintiff could have challenged the determination that the peace officers
had probable cause to believe he was impaired, or raised any of his other

(Footnote Continued on Next Page)

lost driving privileges, the writ of habeas corpus does not apply.  Accordingly,

Plaintiff's claim requesting a writ of habeas corpus pursuant to 28 U.S.C. § 2241

should be denied.

## RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings

herein, **IT IS HEREBY RECOMMENDED** that:

1.   State Defendants' Motion to Dismiss the Complaint (Doc. No. 10), be

**GRANTED**; and

2.   Plaintiff's Complaint (Doc. No. 1), be **DISMISSED**.


Date:  December 12, 2013

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under Local Rule 72.2(b) any party may object to this Report and
Recommendation by filing with the Clerk of Court, and serving all parties by
**December 27, 2013,** a writing which specifically identifies those portions of this
Report to which objections are made and the basis of those objections.  Failure to
comply with this procedure may operate as a forfeiture of the objecting party's
right to seek review in the Court of Appeals.  A party may respond to the
objecting party's brief within **fourteen days** after service thereof.  All briefs filed
under this rule shall be limited to 3500 words.  A judge shall make a de novo
determination of those portions of the Report to which objection is made.  This

---

(Footnote Continued from Previous Page)

constitutional challenges, through the administrative and judicial review process.

Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.